[No. H026396. Sixth Dist. Jan. 4, 2006.]

THE PEOPLE ex rel. MONTEREY MUSHROOMS, INC., Plaintiff and Respondent, v.
STEVEN P. THOMPSON et al., Defendants and Appellants.

26

COUNSEL

Timothy D. Murphy and James Jay Seltzer for Defendants and Appellants.

Joel Franklin for Plaintiff and Respondent.

OPINION

ELIA, J.—After a court trial, defendants Steven P. Thompson, Aster Kifle-Thompson, and the corporations they had formed were found to have violated Insurance Code section 1871.7, subdivision (b), by submitting fraudulent claims for compensation proscribed by Penal Code section 550. On

appeal, defendants contend that the case should have been dismissed because (1) it belonged exclusively in a workers' compensation forum, (2) the People failed to meet the statutory prerequisites for bringing the lawsuit, and (3) defendants' conduct was not unlawful. Defendants further contend that the trial court should have applied a "clear and convincing evidence" standard of proof, that joint and several liability was inappropriate on the facts of the case, and that the damages imposed were unauthorized and excessive. We find no error and affirm the judgment.

## Procedural History

The People[1] initiated this action against defendants for restitution, civil penalties, and an injunction under Insurance Code section 1871.7 of the Insurance Frauds Prevention Act and under Business & Professions Code section 17200 et seq. The People alleged that the individual defendants—Steven Thompson; his wife, Aster Kifle-Thompson; Charles Salzberg, M.D.; Joseph Greenspan, M.D.; and Julius Mueller, M.D.—had participated in a scheme in which they submitted false claims for workers' compensation payments from relator Monterey Mushrooms, Inc., a self-insured employer.[2] According to the complaint, Thompson, who had been convicted in 1997 of seven counts of filing false workers' compensation claims (Ins. Code, § 1871.4, subd. (a)(2)), had organized two corporations, Peninsula Medical Group, P.C. (PMG), and Integrated Family Medical Group, P.C. (IFMG), using Salzberg and Greenspan, respectively, as medical directors. Contrary to laws governing the structure of medical corporations and medical practice, these physicians exercised "absolutely no control, supervision or management" of the corporations they purported to own and operate. Meanwhile, Thompson and Kifle-Thompson represented these corporations and their affiliated clinics to the public and to Monterey Mushrooms as providers of medical services. In billing for treatment of Monterey Mushrooms employees, defendants prepared fraudulent claims for workers' compensation payments for unnecessary and excessive chiropractic treatment, frequently submitting "at least two, and often three" separate claim forms for a single patient visit. Meanwhile, Thompson and Kifle-Thompson maintained control of PMG and IFMG, respectively, through their management corporation, Nevada Practice Management Systems, Inc., in order to "siphon off the profits" earned by PMG and IFMG.

Defendants demurred, asserting lack of jurisdiction and collateral estoppel. They argued that (1) Insurance Code section 1871.7, subdivision (h)(2)(A),

---

[1] The People will often be referred to in this opinion as the "plaintiff."

[2] "A relator has been described thus: 'The real party in interest in whose name a state or an attorney general brings a lawsuit. . . . A person who furnishes information on which a civil or criminal case is based; an informer.' [Citations.]" (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538 [132 Cal.Rptr.2d 165].)

barred the action; (2) the Workers' Compensation Appeals Board (WCAB) had exclusive jurisdiction over the claims asserted; and (3) the issue of entitlement to benefits as to one employee had already been decided by the WCAB, and therefore the issue as to *any* employee was precluded by collateral estoppel.

The trial court overruled the demurrers, and defendants answered. Both sides then moved for summary judgment or, alternatively, summary adjudication. The court denied summary judgment but limited plaintiff's claims to Insurance Code section 1871.7, subdivision (b). The cause of action for violation of Business and Professions Code section 17200 was determined to be preempted by the Workers' Compensation Act (WCA).

A court trial on liability took place between September 11 and 24, 2002. The court granted nonsuit in favor of Mueller, and both Greenspan and Salzberg settled with plaintiff. However, Thompson, Kifle-Thompson, and the corporate defendants were found to be liable for having "set up sham corporations, with medical doctors as ostensible owners, that presented to the public as full-service medical clinics. In reality, the medical doctors were essentially a series of absentee figureheads who gave no consideration for their ownership interests and, for the most part, had no meaningful role in the direction of patient care or general clinic operation." The purpose of these corporations was to allow these defendants to "acquire patients and refer them for chiropractic treatment and to present fraudulent claims for services to third-party payors." The result was that patients were "inevitably being directed to chiropractic 'treatment,' where they were <u>grossly</u> over[-]treated. Bills were generated for these patient visits, and in some cases more than one claim was made for a single session." The court found this to be a "sophisticated, formalized and well-concealed strategy" that enabled Thompson and Kifle-Thompson to "maximize the number of patients and the amount [that] could be billed for visits, without due regard for patient care and needs."

Trial on the remedies portion of the litigation was held on November 6, 2002. On December 3, 2002, the court ruled that the Thompson defendants[3] were jointly and severally liable for civil penalties in the amount of $479,115.29. The court also granted plaintiff's request for injunctive relief and subsequently awarded plaintiff attorney fees in the amount of $1,230,040.

---

[3] The reference to the "Thompson defendants" encompassed Thompson, Kifle-Thompson, Practice Management Systems, Inc. (doing business as Nevada Practice Management Systems, Inc.), PMG, IFMG, and two of their affiliated clinics. All of these defendants except one of the clinics, Clinica Quiropractica Guadalupe, have appealed.

*Discussion*

### 1. *Workers' Compensation as an Exclusive Remedy*

██ Citing Labor Code sections 3602, 3820, and 5300, defendants first renew their argument that the trial court lacked jurisdiction over this lawsuit because all of the issues of "alleged billing fraud" arose from a workers' compensation claim and had to be resolved by the WCAB.[4] Defendants rely on *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*), where the Supreme Court set forth a two-part analysis to help determine whether a cause of action is barred by the exclusivity of the WCA. A court is called upon first to determine "whether the alleged injury falls within the scope of the exclusive remedy provisions." (*Vacanti*, at p. 811.) If the injury "is collateral to or derivative of a personal 'injury sustained and arising out of the course of employment,' " then a cause of action arising from that injury may be subject to the exclusivity bar. (*Id.* at p. 812.) Secondly, the court will consider "whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain." (*Id.* at pp. 811–812.) "Where the acts are 'a "normal" part of the employment relationship' [citation], or workers' compensation claims process [citation], or where the motive behind these acts does not violate a 'fundamental policy of this state' [citation], then the cause of action is barred" by the exclusivity provisions of the WCA. (*Vacanti*, at p. 812.) As we will explain, however, *Vacanti* does not bar the present action brought under the Insurance Frauds Prevention Act.

Defendants maintain that this case amounted to "a billing overcharge dispute" that had to be litigated within the confines of the workers' compensation system. In their view, "this case proved nothing more, than that the plaintiff was unhappy with the defendants' billing practices." Defendants point out that Labor Code section 3820, subdivision (d), already provides for civil penalties for fraudulent claims.[5] But in that provision the Legislature expressly acknowledged that other penalties may exist, and it stated that the penalty set forth in subdivision (d) may be imposed "in addition to any other

---

[4] The portion of Labor Code section 5300 on which defendants rely specifies the proceedings that must be instituted before the WCAB "and not elsewhere, except as otherwise provided in [the WCA]: [¶] (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto."

[5] Presumably defendants are alluding to subdivision (b)(2) of Labor Code section 3820, which makes it unlawful to "[p]resent or cause to be presented any knowingly false or fraudulent written or oral material statement in support of, or in opposition to, any claim for compensation for the purpose of obtaining or denying any compensation, as defined in Section 3207." (See fn. 7, *post.*) It is also illegal to "[k]nowingly assist, abet, solicit, or conspire with any person who engages in an unlawful act under this section." (Lab. Code, § 3820, subd. (b)(5).)

penalties that may be prescribed by law." And in subdivision (a) of Labor Code section 3820 the Legislature expressly recognized "that the conduct prohibited by this section is, for the most part, already subject to criminal penalties pursuant to other provisions of law."[6]

■ The application of Insurance Code section 1871.7, subdivision (b), was clearly authorized in this case. As the trial court recognized, this statute was intended to encompass fraudulent claims for workers' compensation benefits. It specifically provides for civil penalties for claims for compensation under Labor Code section 3207, which is part of the WCA.[7] Indeed, in enacting the Insurance Frauds Prevention Act, the Legislature clearly expressed its intent to promote the investigation and prosecution of insurance fraud, including workers' compensation fraud, which "harms employers by contributing to the increasingly high cost of workers' compensation insurance and self-insurance and harms employees by undermining the perceived legitimacy of all workers' compensation claims." (Ins. Code, § 1871, subd. (d).) "Prevention of workers' compensation insurance fraud may reduce the number of workers' compensation claims and claim payments thereby producing a commensurate reduction in workers' compensation costs. Prevention of workers' compensation insurance fraud will assist in restoring confidence and faith in the workers' compensation system, and will facilitate expedient and full compensation for employees injured at the workplace." (*Id.*, subd. (e).) ■ Lest there be any residual confusion over the authority to proceed, Insurance Code section 1871.7, subdivision (k), makes it clear that the remedies it provides are "in addition to any other remedies provided by existing law."

■ Furthermore, Penal Code section 550, on which the Insurance Code section 1871.7 allegations were predicated in this case, prohibits the knowing submission of false or fraudulent claims for payment of health care benefits. The statute specifically defines "a claim for payment of a health care benefit" to include a "claim for payment submitted by or on the behalf of a provider of any workers' compensation health benefits under the Labor Code." (Pen. Code, § 550, subd. (a)(10).)

---

[6] In enacting Labor Code section 3820 in 1993, the Legislature expressed its "compelling interest in eliminating fraud in the workers' compensation system. The Legislature recognizes that the conduct prohibited by this section is, for the most part, already subject to criminal penalties pursuant to other provisions of law. However, the Legislature finds and declares that the addition of civil money penalties will provide necessary enforcement flexibility. The Legislature, in exercising its plenary authority related to workers' compensation, declares that these sections are both necessary and carefully tailored to combat the fraud and abuse that is rampant in the workers' compensation system." (Lab. Code, § 3820, subd. (a).)

[7] Labor Code section 3207 defines "compensation" as "compensation under this division [including] every benefit or payment conferred by this division upon an injured employee, or in the event of his or her death, upon his or her dependents, without regard to negligence."

■ The express inclusion of workers' compensation claims thus demonstrates the Legislature's intention to allow civil actions under Insurance Code section 1871.7 arising from fraudulent acts made unlawful by Penal Code section 550, notwithstanding applicability of the WCA. None of the cases cited by defendants compels or suggests a different conclusion. We therefore agree with the trial court's conclusion that the exclusivity provisions of the WCA did not bar this action.

## 2. *Res Judicata*

At trial defendants relied on the theory that all of the treatment and charges targeted by the People's lawsuit had already been found reasonable and necessary by the WCAB. Defendants asked the court to enter a finding consistent with that result. The People responded that in this context the conduct could not be considered reasonable and necessary if the treatment and billing had been performed by an illegal medical corporation. The trial court agreed with the People that collateral estoppel did not apply, as this case was based on Insurance Code section 1871, and "[t]he workers['] compensation board did not have before it the broad pattern of conduct that is alleged here." Subsequently the court declined defendants' request to admit workers' compensation records of four patients showing "the issues that were presented to, or could have been presented to the work[ers'] compensation court . . . that the court actually decided, or that the court could have decided, had they been argued in those cases."

On appeal, defendants contend that the principles of res judicata preclude this action because Monterey Mushrooms had already litigated the claims of patients treated at the Thompson clinics and those claims had been decided in a workers' compensation forum. Beyond this vague assertion defendants do not explain how the court erred in rejecting a res judicata defense on the facts of this case. They have not supplied pertinent authority, record references, or reasoning to show that these were the same causes of action that were addressed in the WCAB proceedings. Their claim that plaintiff "was entitled to one, and only one, remedy for its alleged injuries, and to one judgment" is not helpful, as this action involved a different plaintiff seeking a different remedy under a different statutory scheme.

As to collateral estoppel, defendants do not address the requirements for establishing this theory or even acknowledge the distinction between the "claim preclusion" and "issue preclusion" aspects of res judicata.[8] They complain about the trial court's exclusion of the patient records, but they fail

---

[8] "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' "

to argue, much less show, how the evidentiary ruling constituted an abuse of discretion, nor do they discuss how those records would have established "not just the substantial, but the complete, likeness of the issues" litigated in the workers' compensation proceedings. The action was properly allowed to go forward notwithstanding defendants' assertions of res judicata.

### 3. *Abatement*

Among the motions in limine presented by the parties was a defense request for an order of abatement, based on the pendency of two claims then pending in workers' compensation proceedings. The trial court eventually denied the request. On appeal, defendants argue that abatement was called for here, as the WCAB "had long since acquired jurisdiction over every case described by the complaint," and it was empowered to "dispose of an entire controversy."

This argument must be rejected for the same reasons that pertain to defendants' theory of res judicata. This was a different controversy involving different alleged wrongs which were prosecuted in accordance with a different statutory authority. Defendants have failed to show that abatement was required or even appropriate in these procedural circumstances, or that they would have obtained a more favorable disposition of this action had their abatement request been granted. (See *Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 787 [274 Cal.Rptr. 147] [abatement not appropriate where the first action cannot provide the relief sought in the second]; *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 772 [25 Cal.Rptr.2d 192] [trial court error in determining application of the rule of exclusive concurrent jurisdiction is reversible only where the error results in a miscarriage of justice or prejudice to the party asserting the rule].)

### 4. *Jurisdiction Under Insurance Code Section 1871.7, Subdivision (h)*

█ Defendants further contend that this action was unauthorized under the Insurance Frauds Prevention Act because its strict requirements for jurisdiction were not met. Insurance Code section 1871.7, subdivision (h)(2)(A), on which defendants rely, states that a court has no jurisdiction over an action brought under that section if the action is "*based upon the public disclosure* of allegations or transactions in a criminal, civil, or administrative hearing in a legislative or administrative report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person

---

(*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297], quoting *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].)

bringing the action is an *original source* of the information." (Italics added.) Defendants argue that this action was beyond the trial court's jurisdiction because it was derived from the public records of workers' compensation proceedings, publicly disclosed information in patient treatment records, or publicly disclosed transactions involving the corporate defendants.

■ The trial court ruled that Monterey Mushrooms was an "original source of the information on which this case is based." The term "original source" as used in Insurance Code section 1871.7, subdivision (h)(2)(A), means "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the district attorney or commissioner before filing an action under this section which is based on the information." (Ins. Code, § 1871.7, subd. (h)(2)(B).) Defendants fail to point to anything in the record that refutes or even acknowledges the trial court's factual finding that Monterey Mushrooms had "direct and independent knowledge of the defendants' conduct" and therefore met the jurisdictional threshold of the statute as an "original source."[9]

Defendants' opposition to the court's assumption of jurisdiction resembles that of the defendants in *People ex rel. Allstate Ins. Co. v. Weitzman, supra,* 107 Cal.App.4th 534. There, construing the same provision at issue here, the Second Appellate District, Division Five, held that the relator, Allstate Insurance Company, had surmounted the jurisdictional bar of subdivision (h)(2) of Insurance Code section 1871.7 and could be deemed an "original source" of the information leading to its allegations of insurance fraud. The court discerned the purpose of this provision to be "to prevent qui tam actions brought by persons who, like the relator in *U.S. ex rel. Marcus v. Hess* [(1943)] 317 U.S. [537, 545–548] [87 L.Ed. 443, 63 S.Ct. 379], simply copied allegations from a criminal indictment on file, learned of the specific fraudulent conduct at issue through public channels, and . . . had not contributed or assisted in a material way in exposing the fraud. [Citations.] The California Legislature, in adopting subdivision (h)(2), intended to bar parasitic or opportunistic actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud." (*People ex rel. Allstate Ins. Co. v. Weitzman, supra,* at p. 564.) Allstate had not simply taken advantage of publicly disclosed information from another insurer's prior lawsuit; it met the legislative goal of encouraging insurers to help combat insurance fraud by conducting its own investigation and

---

[9] Only in their reply brief do defendants recall some of the testimony presented at trial. To accept defendants' belated and one-sided account of this evidence would be unfair to the People as respondent and would be inconsistent with the substantial evidence rule, under which this court must review the record in the light most favorable to the judgment.

expending its own resources to expose hundreds of fraudulent insurance claims. (*Id.* at p. 566.) Although the public disclosure of the fraud ring at issue may have prompted Allstate to investigate whether it had been a target of the fraud, "it was only through Allstate's own considerable efforts that the facts specific to frauds perpetrated on it came to light." (*Id.* at p. 565.) To bar Allstate from the action "would be contrary to the legislative goal of encouraging insurers to participate in the battle against automobile insurance fraud by bringing section 1871.7 actions; [would] undermine the legislative intent that insurers assist in the prevention, identification, investigation, and prosecution of automobile insurance fraud; and would diminish realization of the legislative goal of coordinated efforts by law enforcement agencies and insurers to deal with the serious and prevalent insurance fraud problem." (*Id.* at p. 565; cf. *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1683 [1 Cal.Rptr.3d 312] [applying similar public-disclosure provision in California False Claims Act].)

In their reply brief, defendants illogically and irrelevantly argue that Monterey Mushrooms cannot be deemed a relator because "it is not an individual and only an 'individual' can be an original source. Correspondingly, only an original source can be a relator." As this point was not urged in their opening brief and was only indirectly (and unnecessarily) addressed by the People, we need not consider it. We parenthetically observe, however, as did the trial court, that the Legislature specifically designated an insurer as a "person bringing the action" under Insurance Code section 1871.7. (§ 1871.7, subd. (e)(1).) In our view, to construe "original source" to be solely a human "individual" would render meaningless the condition that the "person bringing the action" be "an original source of the information." (§ 1871.7, subd. (h)(2)(A).) Although the question was not raised in *Weitzman*, the implicit premise of its holding was that an insurance company can be deemed an original source even though it is not a live person.

Defendants thus offer no reason to reach a different result in this case. We conclude, therefore, that the trial court correctly applied Insurance Code section 1871.7, subdivision (h), consistently with the purpose of the provision and the facts before it, to find that it had jurisdiction to rule on the allegations against defendants.

5. *Legal Basis for Liability*

Defendants next contend that the complaint should have been dismissed because plaintiff failed to show that defendants knowingly presented false or fraudulent claims. According to defendants, the Corporations Code does not mandate any specific "method" of billing or "form for use in submitting a health provider's invoice." The only restriction that applied to them, they

insist, was the limitation on the number of shares they could own, as set forth in Corporations Code section 13401.5.[10]

In making this argument defendants ignore the essence of the allegations against them. They were charged not merely with corporate procedural irregularities, but with serious violations of Penal Code section 550, which the trial court found true. Defendants fail to address these elements except to protest, contrary to the trial judge's factual findings, that plaintiff failed to prove "intent to deceive . . . because defendants' conduct was legal." They also assert, again contrary to the verdict and without acknowledging the standard of review on appeal, that "the uncontroverted evidence" showed that the physicians affiliated with the medical corporations "delivered *medical* services of all kinds at the Thompson-related clinics, though without question the offices specialized in the musculo-skeletal type of complaint." Having generated a "straw man" argument instead of accurately citing the pertinent facts and applicable law, defendants provide no basis for finding error based on the allowable billing methods, "style of business operation," and delivery of medical services at their clinics.

6. *Corporate Control*

Defendants further argue that plaintiff "failed to establish that California law requires a particular system of 'control' over the daily operation of a multi-disciplinary medical corporation." The Corporations Code, they claim, "does not proscribe [*sic*] rules for operation of an MD/DC corporation." Defendants also maintain that plaintiff "failed to introduce evidence that the medical treatment of any of the patients involved in the case was at all affected by the control systems that in fact were used at Peninsula [Medical Group]."

Their assertion is supported by neither citation to pertinent authority nor the facts found true by the trial court. As in the previous argument, defendants fail even to acknowledge the substantial evidence rule. Only in their reply brief do they attempt to challenge the adequacy of plaintiff's proof. This belated effort, however, does not comport with this court's function on review; it consists of rhetorical challenges to the plaintiff's representation of

---

[10] The portion of this statute on which defendants rely states: "Notwithstanding subdivision (d) of Section 13401 and any other provision of law, the following licensed persons may be shareholders, officers, directors, or professional employees of the professional corporations designated in this section so long as the sum of all shares owned by those licensed persons does not exceed 49 percent of the total number of shares of the professional corporation so designated herein, and so long as the number of those licensed persons owning shares in the professional corporation so designated herein does not exceed the number of persons licensed by the governmental agency regulating the designated professional corporation: [¶] (a) Medical corporation. [¶] . . . [¶] (7) Licensed chiropractors. . . ."

the facts and presents a slanted account of the evidence more appropriate in a closing argument to the trier of fact. (Cf. *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416] [attack on the evidence without a fair statement of the evidence is entitled to no consideration when substantial amount of evidence was received on behalf of the respondent].) Were we to address defendants' untimely argument on the merits in accordance with the proper standard of review,[11] we would nonetheless conclude, having examined the extensive testimony and exhibits in the record, that substantial evidence supported the factual findings of the trial court.

### 7. *Liability of Nontreating Defendants*

Defendants next contend that Kifle-Thompson and IFMG should have been dismissed as defendants because they had not treated any of the patients who were identified in the complaint. Again they ignore the allegations, the evidence presented, and the trial court's findings. This case was not merely about the submission of false or excessive treatment claims regarding specific employees; it embraced an entire scheme in which Kifle-Thompson, on her own and through IFMG, helped defraud Monterey Mushrooms, the workers' compensation system, and the public. The trial testimony and documentary evidence convinced the trial court as fact finder that Kifle-Thompson and her husband had set up illegal corporate medical practices, "affecting not just a single patient or employer or even solely patients with industrial injuries." They gave physicians ostensible ownership of these corporations while retaining full control over the structure, finances, and operation of each corporation, including patient care. They managed to deceive the Secretary of State and the medical board by representing that PMG and IFMG would be engaged in the practice of medicine and then portrayed these entities as medical clinics to the public, to insurers, and to the WCAB.

It is clear from the record that Kifle-Thompson was an active part of the conspiracy enabling them to achieve these objectives through PMG, IFMG, and Nevada Practice Management Systems, Inc., their "management service"

---

[11] When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, all presumptions favor the trial court's determination, and we review the record in the light most favorable to the judgment. (*Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241, 259 [259 Cal.Rptr. 311].) We may determine only "whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) As long as there is substantial evidence, " 'the appellate court *must affirm* . . . even if the reviewing justices personally would have ruled differently had they presided over the proceedings below, and even if other substantial evidence would have supported a different result.' " (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5 [102 Cal.Rptr.2d 157].)

or "shell" corporation. Defendants do not mount a challenge asserting insufficient evidence to support this factual conclusion. Because their argument is premised on a version of the facts that is inconsistent with the evidence and findings of the court, it must be rejected.

## 8. *Standard of Proof*

■ Echoing a motion in limine made by Mueller and their own motion for a new trial, defendants contend that the trial court should have applied a higher standard of proof, that of clear and convincing evidence. We disagree. Evidence Code section 115, which describes the applicable burdens of proof,[12] states: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." (See *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 546 [110 Cal.Rptr.2d 412, 28 P.3d 151] [default standard of proof in civil cases is preponderance of the evidence].) "Generally, a higher burden of proof applies only where particularly important individual interests or rights, which are more substantial than the loss of money, are at stake. [Citations.] Thus, for example, the clear and convincing evidence burden of proof has been applied where constitutional due process rights or important general public policy considerations are implicated." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 365 [15 Cal.Rptr.3d 430].)

■ Defendants suggest no law—statutory, decisional, or constitutional—that imposes a burden to show liability under Insurance Code section 1871.7 by clear and convincing evidence. They cite *Liodas v. Sahadi* (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316], but only for the observation that statutory exceptions may elevate the standard for civil fraud from preponderance of the evidence. Defendants merely assert that Insurance Code section 1871.7, subdivision (b), "is just such an exception," without giving any reason to justify imposing a higher standard. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827 [46 Cal.Rptr.2d 198] [where one statute requires clear and convincing proof and a related statute is silent regarding the burden of proof, preponderance standard applies to related statute absent other considerations]; accord, *Baxter Healthcare Corp. v. Denton, supra,* 120 Cal.App.4th at p. 366.) They point to no sentence in Insurance Code section 1871.7 that indicates a higher standard of proof here, and they offer no due process or public policy considerations at stake. We therefore have no reason

---

[12] This statute defines three standards of proof as follows: " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt." (Evid. Code, § 115.)

to disagree with the conclusion of *People ex. rel. Allstate Insurance Co. v. Muhyeldin* (2003) 112 Cal.App.4th 604, 610–611 [5 Cal.Rptr.3d 492] (not mentioned by defendants) that preponderance of the evidence is the appropriate standard of proof for liability under Insurance Code section 1871.7. The trial court correctly applied this standard in weighing the evidence presented at trial.

9. *Joint and Several Liability*

As noted earlier, the Thompson defendants (Thompson, Kifle-Thompson, and their corporate entities) were found jointly and severally liable for civil penalties. Defendants contend that this ruling was "against the law" because it was not specifically authorized by Insurance Code section 1871.7. According to defendants, a corporate director or executive "cannot be held personally liable for injury that the corporation inflicts upon a third party, unless in some fashion he intentionally participated in the company's alleged wrongdoing. . . . Similarly, principles of *respondeat superior* hold the corporate employer liable for the negligent torts of its employees which occur within the course and scope of their employment." Defendants do not explain how this case has anything to do with negligent torts.

Attempting to apply these principles to the present case, defendants argue that Kifle-Thompson and IFMG should not have been found liable because they had not participated in the diagnosis and treatment of the patients named in the complaint, and "[n]either of these defendants ever submitted a bill for services rendered to any of the patients." In non sequitur fashion, defendants then conclude: "Therefore, even if there existed some operational defect at [IFMG], and none was proved at trial, it could not possibly have caused damage to Monterey Mushrooms. The trial court consequently erred when it held her [*sic*] jointly and severally liable for the damages, fines and penalties that it imposed."

Defendants offer no factual or legal support for any of the individual assertions they make, much less show how these assertions form a coherent argument. They oversimplify their conduct and completely ignore Kifle-Thompson's participation in the fraudulent scheme. They also overlook both the content and purpose of Penal Code section 550 and Insurance Code section 1871.7. Defendants' patchwork contention must be rejected.

10. *Amount of Penalty*

Defendants further complain that the damages imposed, $479,115.29, were improper and excessive. In their view, "[i]t is an uncontested fact in this case that services billed by the defendants to Monterey Mushrooms were in fact

available and were delivered to its employees." Furthermore, "[p]laintiff proved no injury to the public from defendants' conduct, since the evidence admitted pertained only to former or existing employees of Monterey Mushrooms."

We find no error. Defendants' argument once again depends on a version of the facts that is inconsistent with the findings of the trier of fact. We will not reweigh the evidence on which these findings were based. Moreover, the penalties imposed under Insurance Code section 1871.7 could have been much higher. The statute authorized a penalty of $5,000–$10,000 for each fraudulent claim. That formula would have resulted in a $3,515,000 penalty, which the court believed would have been punitive rather than remedial.[13] Accordingly, the court declined to impose any additional amount against defendants.

Defendants also take issue with the number of claims on which damages were based. In their view, the court should have considered four claims, not 703. Of the 703 claim forms introduced at trial, "only 297 show [PMG] as the care provider. The other 406 . . . have a licensed provider name . . . which states the physician or supplier's name. If the provider is a licensed person— not [PMG], then the court could not have properly considered the claim as 'fraudulent' on the plaintiff's (unproved) theory that Peninsula was a 'sham' corporation."

We find no merit in this contention. The penalty imposed under Insurance Code section 1871.7, subdivision (b), is based on the number of claims submitted, not the number of patients involved.[14] Penal Code section 550 also makes it clear that defendants committed a crime each time they made or submitted "*any* false or fraudulent claim" for compensation. (Pen. Code, § 550, subds. (a)(6), (a)(7).) The court properly imposed a penalty for each violation of Penal Code section 550—that is, for each false or fraudulent claim.

11. *Attorney fees*

Defendants request a hearing to determine the amount of attorney fees they should recover under Insurance Code section 1871.7, subdivision (g)(5). Their request, however, is premised on reversal of the judgment. As we have found no ground for reversal, defendants are not entitled to attorney fees and there is no need for a hearing to determine the appropriate amount.

---

[13] As the People point out, had the court imposed the maximum—$10,000 for each of the 703 fraudulent claims submitted—defendants would have been liable for $7,030,000, plus the penalty "of not more than three times the amount of each claim for compensation . . . ." (Ins. Code, § 1871.7, subd. (b).)

[14] The statute assigns the penalty for "each claim for compensation, as defined in Section 3207 of the Labor Code . . . ." (See fn. 7, *ante*.)

*Disposition*

The judgment is affirmed.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied January 27, 2006, and appellants' petition for review by the Supreme Court was denied April 19, 2006, S141449.