# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA;
STATE OF CALIFORNIA, ex rel.
ROMAN ZARETSKY; ROBERT
YARDLEY,

        *Plaintiffs-Appellants,*

        v.

JOHNSON CONTROLS, INC.; MICHAEL
MATHES; RICHARD BEDDIE,

        *Defendants-Appellees,*

        and

MICHAEL PUTICH,

        *Defendant.*

No. 04-55536

D.C. No.
CV-03-00028-DOC

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
February 13, 2006—Pasadena, California

Filed August 9, 2006

Before: William C. Canby, Jr., John T. Noonan, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

9129

**COUNSEL**

Richard C. Goodman and Marc J. Schneider, Stradling Yocca Carlson & Rauth, Newport Beach, California, for the plaintiffs-appellants.

Brian W. McGrath and David W. Simon, Foley & Lardner LLP, Milwaukee, Wisconsin, and Susanne C. Washington, Foley & Lardner LLP, San Diego, California, for the defendants-appellees.

## OPINION

BERZON, Circuit Judge:

This case requires us to interpret, once again, the statutory provisions relating to the "public disclosure" bar and the "original source" exception to that bar in the Federal False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, and the California False Claims Act (CFCA), CAL. GOV'T CODE §§ 12650-12656. We hold that the federal and state statutes do not require that an individual report relevant information to the government prior to the "public disclosure" at issue to qualify as an "original source."

## I.

Johnson Controls, Inc. (Johnson Controls, or the Company) manufactures control systems that monitor and coordinate the air environment in large buildings and building complexes. The Company sells its control systems both directly to end-users and through a network of independent distributors called "Authorized Building Controls Specialists" (ABCSs). Yardley-Zaretsky, Inc. and the George Yardley Co. (collectively, the Yardley Companies) operate as an ABCS. According to Roman Zaretsky, President of Yardley-Zaretsky, Inc., Johnson Controls threatened the Yardley Companies with termination if they bid against Johnson Controls itself on certain government jobs, including jobs at the Long Beach Veterans Administration Hospital and the University of California, Riverside.

The Yardley Companies filed a civil complaint in California state court against Johnson Controls and several of its employees alleging, inter alia, that Johnson Controls was engaged in a bid-rigging scheme in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Johnson Controls removed the case to federal court. The Yardley Companies subsequently voluntarily dismissed the lawsuit and filed a demand for arbitration with the American Arbitration Association, asserting the same claims.[1]

Shortly thereafter Zaretsky and Robert Yardley, Vice-President of Yardley-Zaretsky, Inc., sent letters to officials at the Long Beach Veterans Administration Hospital, the United States Attorney's Office, the University of California, Riverside, and the Office of the California Attorney General, alleging that Johnson Controls violated the FCA and the CFCA. The letters stated that Zaretsky and Yardley (Relators) would file a qui tam complaint,[2] a draft of which was included with the letters, two weeks later, unless state or federal officials contacted them in the meantime.

No governmental officials contacted Relators during the two-week period. Shortly after the two-week period expired, Relators filed under seal a qui tam complaint against Johnson

---

[1]According to appellants' letter submitted to us in accordance with Federal Rule of Appellate Procedure 28(j), the arbitration panel eventually held that the defendants "committed a *per se* antitrust violation, tortious interference, and breach of contract."

[2]Under 31 U.S.C. § 3730, a "qui tam plaintiff," also known as a "relator," may bring a civil action for a violation of the FCA for herself and for the United States government, in the name of the government. *See* 31 U.S.C. § 3730(b)(1).

Under California Government Code section 12652, a "qui tam plaintiff" may bring a civil action for a violation of the CFCA "for [herself] and either for the State of California in the name of the state, if any state funds are involved, or for a political subdivision in the name of the political subdivision, if political subdivision funds are exclusively involved." CAL. GOV'T CODE § 12652(c)(1).

Controls and several of its employees (collectively, JCI), alleging that JCI violated the FCA and the CFCA by engaging in bid-rigging on federal and state government jobs, including jobs at the Long Beach Veterans Administration Hospital and the University of California, Riverside.

After the federal and state governments declined to intervene, the district court filed an order unsealing the complaint.[3] Before Relators obtained discovery from JCI or third parties, and well before the discovery cutoff dates set by the district court, JCI moved for summary judgment on two grounds: (1) that the district court lacked subject matter jurisdiction under 31 U.S.C. § 3730(e)(4) because the complaint was "based upon [a] public disclosure," but Relators were not an "original source"; and (2) that Relators' FCA and CFCA claims fail on the merits because they are "based on an alleged Rule of Reason antitrust violation, a subjective, fact-specific analysis that cannot support False Claims Act liability." Relators' opposition to the motion for summary judgment contended that Relators are an "original source" and that the motion should be denied with respect to the second ground because Relators had not been able to obtain discovery that might reveal pertinent facts.

The district court granted JCI's motion on the ground that there was no subject matter jurisdiction under 31 U.S.C. § 3730(e)(4). The court held that to qualify as an "original source" under the FCA, a prospective relator must provide the government with the pertinent information prior to the "public

---

[3]Under 31 U.S.C. § 3730(b), an FCA qui tam complaint must be filed under seal and served, initially, on the government only. 31 U.S.C. § 3730(b)(2). The qui tam complaint remains under seal for a period of sixty days (or longer, if the government obtains an extension), during which time the government must determine whether to intervene and proceed with the action. *Id.* § 3730(b)(2)-(4). If the government elects not to proceed with the action, the person who initiated the action has the right to conduct the action. *Id.* § 3730(c)(3). The CFCA includes similar requirements. *See* CAL. GOV'T CODE § 12652(c)(2)-(8).

disclosure" at issue if, but only if, the "public disclosure" occurs through a private lawsuit brought by the prospective relator. The district court's order did not address JCI's alternate contention that Relators could not prove a substantive violation of the FCA or the Relators' assertion that decision on that issue should be delayed to allow for development of the record through discovery.

On appeal, Relators contend that the FCA and CFCA do not require them to inform the government prior to public disclosure to qualify as "original sources." JCI disagrees and also argues, in the alternative, that we should affirm on the ground that Relators have not stated a substantive FCA or CFCA violation.

## II.

We review a district court's grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). We must "determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." *Id.*

## A.

## 1.

Section 3730(e)(4) of Title 31 of the United States Code provides, in full:

> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the

Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (footnote omitted).

**[1]** The parties agree that the Yardley Companies' civil complaint in state court alleging, inter alia, antitrust violations was a "public disclosure" of pertinent allegations or transactions, *see United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018-21 (9th Cir. 1999), and that Relators' qui tam action is "based upon" that public disclosure because it contains the same factual allegations, *see United States ex rel. Biddle v. Bd. of Trs. of the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 536-40 (9th Cir. 1998). The district court thus had jurisdiction under § 3730(e)(4) only if Relators are an "original source" within the meaning of the statute.

**[2]** As we noted in *Wang v. FMC Corp.*, § 3730(e)(4)(B) dictates that to be an "original source" a plaintiff must fulfill several requirements: He must "show that he has 'direct and independent knowledge of the information on which his allegation is based' . . . and . . . that he 'has voluntarily provided the information to the Government before filing' his *qui tam* action." 975 F.2d 1412, 1417 (9th Cir. 1992) (emphasis omitted) (quoting 31 U.S.C. § 3730(e)(4)(B)). These requirements flow directly from the text of the statute. *Wang* went on to hold that to be an "original source," a prospective relator must satisfy an additional requirement under § 3730(e)(4)(A) that is not in the statute *in haec verba* but that *Wang* held inherent in it: He must have "had a hand in the public disclosure of

allegations that are a part of [his] suit." *Id.* at 1418. Thus, post-*Wang*, we have summarized the requirements as follows:

> To qualify as an original source, a relator must show that he or she has direct and independent knowledge of the information on which the allegations are based, voluntarily provided the information to the government before filing his or her qui tam action, and had a hand in the public disclosure of allegations that are a part of . . . [the] suit.

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1033 (9th Cir. 1998) (internal quotation marks omitted).

[3] JCI does not contend that Relators fail to satisfy any of the preceding criteria, so, for purposes of this opinion, we treat them as established.[4] Instead, JCI's jurisdictional argument is that Relators fail to satisfy what they argue is an *additional* criterion under § 3730(e)(4): that prospective relators provide the requisite information directly to the government *prior to the public disclosure* at issue. It is undisputed that Relators provided the federal government with no information prior to the filing of the civil complaint in state court, the public disclosure in the present case. Rather, the first time Relators directly provided the federal government with information was when they sent letters to government officials indicating their intent to file a qui tam action, an event which occurred after they filed their civil complaint in state court.

---

[4]JCI's motion for summary judgment stated that "[f]or purposes of this motion, JCI will assume that Relators have 'direct and independent knowledge' of the circumstances underlying the so-called bid-rigging scheme that forms the basis of their FCA claim." JCI's brief to this court states that JCI has "accepted [the] assertion [that Relators had direct and independent knowledge] for the purposes of this analysis, but do not concede that it is true."

**[4]** The only dispute regarding the FCA claim is thus over a single question of law: Does the FCA require — all of the time or, as the district court held, under some circumstances — that prospective relators provide relevant information to the government prior to the public disclosure at issue? The Eighth Circuit has held that the FCA does not so require, and the Sixth and D.C. Circuits have held that it does. *See Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1050-51 (8th Cir. 2002); *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 941-43 (6th Cir. 1997); *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690-91 (D.C. Cir. 1997). No other circuit court has directly addressed the issue, although the Tenth Circuit has commented on it in dicta. *See United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1281 n.3 (10th Cir. 2001) (stating that "the appellees ask the court to read § 3730(e)(4)(B) as requiring a relator to make the voluntary disclosure to the government not just 'before filing' the *qui tam* action but before the public disclosure," noting that "[t]he Tenth Circuit has discussed the voluntary disclosure element as something to be accomplished 'prior to filing suit,' " and then not deciding the question). In concert with the Eighth Circuit and in light of our related FCA case law — which differs from that in the circuits that have answered the prior disclosure question differently — we hold that there is no such requirement.

## 2.

**[5]** In determining whether there is a pre-disclosure notice requirement, we must interpret the FCA "to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940). The starting point for doing so is, of course, the language of the statute itself. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). " 'If a legislative purpose is expressed in plain and unambiguous language, . . . the . . . duty of the courts is to give it effect according to its terms. Exceptions to clearly

delineated statutes will be implied only where essential to prevent absurd results or consequences obviously at variance with the policy of the enactment as a whole.' " *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (omission in original) (quoting *United States v. Rutherford*, 442 U.S. 544, 551-52 (1979)).

**[6]** Here, the language *is* plain and unambiguous with respect to whether it will bear JCI's interpretation. *See Allina*, 276 F.3d at 1050 ("This additional requirement has no textual basis in the statute."). Subsection (B) of § 3730(e)(4) *explicitly* provides a time frame for when individuals wanting to take advantage of the "original source" exception to the "public disclosure" bar must "voluntarily provide[ ] information to the government," stating in no uncertain terms that they must do so "*before filing an action under this section.*" § 3730(e)(4)(B) (emphasis added). Because subsection (B) expressly states a timing requirement different from the one JCI proposes, that subsection is not susceptible to JCI's interpretation. Quite to the contrary, the language of subsection (B) is not compatible with any requirement that the information disclosure occur before some event *other* than the one stated, the time of "filing an action."

**[7]** Subsection (A) § 3730(e)(4) also cannot withstand JCI's interpretation. That subsection states that public disclosure is not a jurisdictional bar if "the person bringing the action is an original source of the information." § 3730(e)(4)(A). This language is ambiguous with respect to the question of whether the prospective relator must be a source for the government or for the entity responsible for the public disclosure, an ambiguity resolved by *Wang* in favor of the latter interpretation. *See Wang*, 975 F.2d at 1418. This language is *not* ambiguous, however, with respect to the question whether the statute requires that the government be notified *prior* to public disclosure. In light of *Wang*, subsection (A) states an exception to the public disclosure bar if the person who brings the action is an original source for the public disclosure, a con-

cept then defined, in part, in subsection (B) by the requirement that information be provided to the government before suit is filed, *not* before the public disclosure that triggered the need for an exception in the first place.

In *Findley*, the D.C. Circuit noted that "the government notice part of the 'original source' exception may appear extraneous in light of the statute's filing provisions, which require cases to be filed under seal for a period of at least sixty days and served only on the government." 105 F.3d at 690 (referring to provisions in § 3730(e)(4)(B) and 3730(b)(2), respectively). The court went on to observe that the government notification provision in § 3730(e)(4)(B) is not superfluous if it is interpreted to require notice to the government prior to any public disclosure. *See id.* at 690-91. On the basis of that and other considerations — but with no basis in the language of the pertinent sections — the court held that § 3730(e)(4) requires that an individual notify the government *prior to any public disclosure* to qualify as an original source. *Id.*

We are far from sure that even the redundancy *Findley* supposes would justify inserting an additional requirement at odds with the plain language of § 3730(e)(4)(B). *See Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1257 n.8 (9th Cir. 2001) (concluding that, "[d]espite the general principle against construing a statute so as to contain redundancies," two statutory provisions in the Americans with Disabilities Act were "intended to encompass the same basic requirements").

In any event, we disagree with *Findley*'s predicate assumption that the government notice provision in § 3730(e)(4)(B) is redundant with the filing and notice provisions in § 3730(b). The statutory provisions are different in a number of respects, indicating that they serve different functions. Section 3730(e)(4)(B)'s notice provisions apply only to qui tam plaintiffs seeking to avoid the "public disclosure" bar by

establishing that they are "original sources," whereas § 3730(b)'s notice provisions apply to *all* qui tam plaintiffs. Moreover, the provisions differ with respect to what must be turned over to the government: Section 3730(e)(4)(B) requires individuals to provide the government with "information" only, while § 3730(b) requires individuals to provide the government with much more — "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." § 3730(b)(2). At the same time, the provisions vary in that § 3730(e)(4)(B) incorporates a requirement that information be provided to the government "voluntarily," a requirement wholly absent from § 3730(b). *See United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 744 (9th Cir. 1995) (en banc) (holding that disclosures of a government auditor who "was employed specifically to disclose fraud" were "nonvoluntary" and that the auditor was thus not an "original source"). Finally, submissions to the government at the same time the lawsuit is filed under seal under § 3730(b) protect the relator's right to a bounty, *see* 31 U.S.C. § 3730(d), while there is no such explicit protection in the statute for pre-filing submissions under § 3730(e)(4)(B).

We therefore do not find the D.C. Circuit's redundancy point helpful in construing § 3730(e)(4)(B). The statutory language is simply not ambiguous with respect to JCI's proposed requirement.

Even if we were to conclude otherwise and "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy," *Crandon v. United States*, 494 U.S. 152, 158 (1990), JCI's reading could not be sustained. The proposed requirement does not advance the object and policy of the statute as a whole, or of the public disclosure provision in particular.

The purposes of the FCA as reflected in the Act's history

have been well documented elsewhere.[5] *See, e.g.*, *Allina*, 276 F.3d at 1041-42; *McKenzie*, 123 F.3d at 938; *Findley*, 105 F.3d at 679-81; *Wang*, 975 F.2d at 1418-19. Suffice it to say that, in enacting the current version of the qui tam provisions in 1986, Congress attempted to strike a delicate balance between several competing objectives. First and foremost, Congress meant "to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward." H.R. Rep. No. 99-660, at 23 (1986). At the same time, Congress sought to discourage "parasitic" suits brought by individuals with no information of

---

[5]We summarize the key points in the history of the FCA: The original FCA was enacted in 1863, Act of March 2, 1863, ch. 67, § 4, 12 Stat. 696, 698 (current version at 31 U.S.C. §§ 3729-3733), to combat fraud by Civil War defense contractors. S. REP. NO. 99-345, at 8 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. The Act contained a qui tam provision allowing any person to sue as a relator representing the government's interests. *Id.* at 10. In *United States ex rel. Marcus v. Hess*, the Supreme Court held that even individuals who had done nothing more than copy allegations from a criminal indictment could be qui tam relators. 317 U.S. 537, 545-46 (1943).

In response to *Hess*, Congress amended the Act in 1943, removing jurisdiction over qui tam actions "whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." 31 U.S.C. § 232(C) (1946) (amended 1986). This provision was meant to "curtail parasitical suits in which the informer 'rendered no service' to the government." *Allina*, 276 F.3d at 1041 (quoting 89 CONG. REC. 10844, 10846 (1943)). Courts interpreted this jurisdictional bar restrictively. For example, in 1984, the Seventh Circuit held that a state that had disclosed Medicaid fraud to the government, as it was required to do by statute, was jurisdictionally barred from being a qui tam relator. *See United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100, 1103-07 (7th Cir. 1984).

In 1986, Congress again amended the False Claims Act, in part to "correct[ ] restrictive [court] interpretations" that "tend to thwart the effectiveness of the statute," S. REP. NO. 99-345, at 4, and to "encourage more private enforcement suits," *id.* at 23-24. The 1986 amendments included the public disclosure and original source provisions that now appear at 31 U.S.C. § 3730(e)(4).

their own to contribute to the suit. *See Seal 1 v. Seal A*, 255 F.3d 1154, 1158 (9th Cir. 2001). Congress also meant to add to the corps of enforcers of the law — "to encourage more private enforcement suits," S. REP. No. 99-345, at 23-24 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5288-89 — while "ensuring that the United States' rights are not prejudiced by the relator's conducting of the action," *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 964 (9th Cir. 1995). JCI's proposed requirement does not further these carefully balanced congressional goals.

As to the first goal, encouraging citizens to come forward with information concerning fraud on the federal government, the Sixth Circuit contends that JCI's proposed rule, requiring notification to the government prior to any public disclosure to qualify as an original source, "is most likely to bring 'wrongdoing to light,' " because the proposed rule "discourages persons with relevant information from remaining silent and encourages them to report such information at the earliest possible time." *McKenzie*, 123 F.3d at 943 (internal quotation marks omitted). This rationale is not persuasive in our circuit, given our rulings.

*Biddle* held that a qui tam action is "based upon" a public disclosure within the meaning of the statute if the allegations or transactions of the complaint have been publicly disclosed and the qui tam action follows, even if the qui tam action allegations were not "derived from" the public disclosure. 161 F.3d at 540. Thus, under *Biddle,* an individual with information about fraud against the government will be barred from bringing suit if there has been a public disclosure of the allegations or transactions in her complaint unless she is an "original source," even if she found out about the allegations in her complaint not from the public disclosure but from another source (such as an informant). Such an individual therefore has the incentive to either (1) file a qui tam complaint before the pertinent information is publicly disclosed, or (2) ensure that she qualifies as an "original source." Because *Wang*, in

turn, holds that one must have had a hand in the public disclosure to qualify as an "original source," an individual with pertinent information can ensure she qualifies as an "original source" under the statute only by playing a role in the public disclosure at issue. Thus, *Wang* and *Biddle* operate together to assure that individuals who have direct information about fraud against the government have a strong incentive to come forward with that information early, either by (1) filing a qui tam complaint, or (2) playing a role in publicly disclosing the information so as to ensure they are "original sources." Either way, *Wang* and *Biddle* provide potential relators with an incentive to come forward with information rather than keeping it secret until the last possible minute. JCI's proposed requirement does not create an incentive for individuals to come forward with information *earlier* than do the *Wang* and *Biddle* rules, taken together. That requirement therefore does not serve the first goal of the statute.

As to the second goal, discouraging parasitic lawsuits, the Sixth Circuit maintains that the requirement that the prospective relator report information to the government prior to the public disclosure effectuates Congress's goal of protecting only the "true whistleblower," not individuals bringing "parasitic qui tam actions." *McKenzie*, 123 F.3d at 943 (internal quotation marks omitted). It is true that in the Sixth and D.C. Circuits, given those circuits' surrounding law, the proposed requirement may help to some degree to serve this goal. Those circuits permit relators to be "original sources" even if they had nothing to do with the public disclosures. *See id.* at 943; *Findley*, 105 F.3d at 690. On this view of the connection between an original source and the public disclosure, a "source" that provides information to the government privately only *after* there has been public disclosure *by someone else* has performed little useful information-providing function, because the government could get the same information from the public source. In contrast, we (along with the Second Circuit, *see United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir. 1990)), have interpreted the stat-

ute to require that prospective relators play a role in the public disclosure at issue if they are to partake of the original source exception. *Wang*, 975 F.2d at 1418. Under our interpretation of that exception, then, relators *must* provide a useful information-providing role or they cannot file suit. JCI's proposed requirement therefore does nothing to further the purpose of weeding out parasitic lawsuits, as *Wang* already accomplishes that goal.

Finally, JCI's proposed requirement also does not further the third goal of the statute, encouraging more private enforcement suits while ensuring that the government's rights are not prejudiced by the manner in which relators conduct those suits. The proposed requirement *discourages* qui tam suits, as it establishes yet another roadblock to obtaining jurisdiction for such suits. At the same time, it provides no protection of the government's rights concerning qui tam suits not already provided by (1) § 3730(e)(4)(B), which requires that an individual provide information to the government prior to filing a qui tam complaint to qualify as an "original source," and (2) § 3730(b), which provides that qui tam complaints must be filed under seal and served solely on the government so as to provide the government with an opportunity to determine whether to intervene and proceed with the action before the defendant learns of the action, *see* § 3730(b)(2). In particular, the proposed requirement would not ensure against "tip offs" by prospective qui tam plaintiffs to the targets of ongoing government investigations. *Cf.* S. REP. NO. 99-345, at 24 (noting that § 3730(b) is motivated, in part, by a concern that the filing of a qui tam action could "tip off" targets of ongoing government criminal investigations). The proposed requirement provides no mechanism for requiring or inducing prospective relators *not* to publicly disclose pertinent information once they have provided information to the government, and so does not preclude tip-offs to prospective defendants.

In short, given existing case law in our circuit, JCI's proposed requirement does nothing to further the purposes of the

FCA. Instead, the requirement is *contrary* to those purposes, as it precludes qui tam actions that are not parasitic in nature.

**3.**

The district court in this case attempted to respond to some of these problems with the position advocated by JCI by adopting a more limited approach. The district court held that prospective relators must inform the government prior to public disclosure if, but only if, the public disclosure is in the form of a lawsuit filed by the prospective relators. This limited version of JCI's proposed requirement exacerbates rather than cures the problems with a non-literal interpretation of the statute.

The district court maintained, first, that without such a requirement, a prospective whistleblower could use the threat of a qui tam action as leverage in private settlement negotiations of a private lawsuit filed prior to giving information to the federal government. The district court reasoned that if prospective defendants were able to "buy" from prospective relators a promise not to bring a qui tam action, the government would never learn about the fraud and thus may never recover its losses. For other kinds of public disclosures — releases to the media, for example — this consideration, suggested the district court, does not obtain, so for those circumstances the literal interpretation adopted by the Eighth Circuit is proper.

This reasoning in support of a special rule that applies only when the "public disclosure" at issue occurs through the filing of a lawsuit is flawed for several reasons. First and most important, a special rule for disclosure through lawsuits has absolutely no basis in the statutory language or structure. The statute treats all forms of public disclosure equally. The special problems the district court perceived with lawsuits as opposed to other forms of public disclosure are related not to the "disclosure" aspect of lawsuits — that a complaint is a public document — but to their ultimate dispute-resolution

function, a function that could be pursued through private mediation or arbitration not giving rise to any public disclosure.

Second, one of the premises underlying the district court's reasoning — that a prefiling agreement by a prospective relator not to bring a qui tam action, entered into without the government's knowledge or consent, is enforceable — is false. We so held in *Green*. *See* 59 F.3d at 969; *see also United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997) (distinguishing *Green* and enforcing such an agreement in a case in which the government was aware of and had investigated the relevant allegations). Thus, the district court's approach does little to further the goal of ensuring that prefiling releases do not squelch the flow of information about fraud to the government, as *Green* and *Hall* already serve this goal.

Third, the district court's requirement does little to cure the problem at which it is directed. Prospective relators could still issue demand letters and settle prospective suits *before* filing the suit that would constitute a public disclosure. Here, for example, there is no reason Zaretsky or Yardley could not have written to Johnson Controls threatening to bring the original antitrust suit and pointing out that the suit, if filed, could result in governmental knowledge and involvement. If settlement ensued, the result would be *greater* secrecy, not less, as the information underlying the suit would never have seen the light of day. In contrast, once a predicate suit is filed, the government *could* learn of the information on which it is based — which is why it is considered a public disclosure.

**[8]** In sum, we agree with the Eighth Circuit's conclusion that it "would change the balance Congress struck if we were to further restrict the class of those whose discoveries had been made public but who were nevertheless permitted to proceed as relators." *Allina*, 276 F.3d at 1051. We therefore hold that the FCA does not require individuals to inform the gov-

ernment prior to the public disclosure at issue to qualify as "original sources." We accordingly reverse the district court's grant of summary judgment to JCI on the FCA claim.

## B.

[9] The California False Claims Act has a jurisdictional public disclosure bar almost identical to the federal one, except that it makes explicit the rule adopted by our circuit in *Wang*.[6] It states, in full:

> (3)(A) No court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.

> (B) For purposes of subparagraph (A), "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based, who voluntarily provided the information to the state or political subdivision before filing an action based on that information, and whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure as described in subparagraph (A).

---

[6]The California adoption of the rule that the original source must be the source of any public disclosure pre-dated *Wang*, as California adopted its version of that rule in 1987. *See* Act of Sept. 30, 1987, ch. 1420, § 1, 1987 Cal. Stat. 5237, 5242 (codified at CAL. GOV'T CODE § 12652(d)(3)(B)).

CAL. GOV'T CODE § 12652(d)(3).

JCI's argument concerning why there is no jurisdiction under the CFCA is identical to its parallel argument under the FCA — that the CFCA requires that a prospective relator inform relevant governmental authorities prior to public disclosure to qualify as an "original source." Only one published California case has had occasion to interpret the "public disclosure" bar of the CFCA,[7] *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.*, 109 Cal. App. 4th 1668, 1676-86 (Ct. App. 2003), while two California cases have interpreted a similar "public disclosure" bar under section 1871.7(h)(2) of the California Insurance Code,[8] *see People ex rel. Monterey Mushrooms, Inc. v. Thompson*, 136 Cal. App. 4th 24, 32-34 (Ct. App. 2006); *People ex rel. Allstate Ins. Co. v. Weitzman*, 107 Cal. App. 4th 534, 545-66 (Ct. App. 2003). None of these cases addressed whether an individual must inform the government prior to "public disclosure" to qualify as an "original source."

---

[7]A case currently pending before the California Supreme Court involves the public disclosure bar but not the original source provision. *See State ex rel. Harris v. PricewaterhouseCoopers LLP*, 23 Cal. Rptr. 3d 529, 547-49 (Ct. App. 2005), *review granted*, 28 Cal. Rptr. 3d 646 (2005); *see also* Cal. R. Ct. 976(d) (stating that unless otherwise ordered, lower court opinions are depublished when the California Supreme Court grants review).

[8]California Insurance Code section 1871.7(h)(2) provides:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing in a legislative or administrative report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B)   For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the district attorney or commissioner before filing an action under this section which is based on the information.

Where the wording and objectives of a California statute are similar to the wording and objectives of a federal statute, California courts look to interpretations of the federal statute for guidance in interpreting the state statute. *See Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (2001); *Allstate*, 107 Cal. App. 4th at 563 (applying this principle to California Insurance Code section 1871.7(h)(2) and 31 U.S.C. § 3730(e)(4)). Applying this precept, California courts interpreting the CFCA generally rely on FCA cases. *See City of Pomona v. Superior Court*, 89 Cal. App. 4th 793, 802 (Ct. App. 2001) ("Given the lack of California authority and the very close similarity of [the CFCA] to [the FCA], it is appropriate to turn to federal cases for guidance in interpreting the act."); *Wohlner*, 109 Cal. App. 4th at 1677-86 (looking to federal cases in interpreting the CFCA, including the public disclosure provisions). Where, however, "there are varying circuit approaches to a federal statute," California courts need not follow any one of those circuit approaches and instead may take a "flexible" approach to interpreting a statute, taking into consideration a number of other factors. *Allstate*, 107 Cal. App. 4th at 563.

Here, the relevant language in the CFCA and the FCA — as interpreted by us in *Wang* and the Second Circuit in *Dick* — is materially identical. All requirements in § 3730(e)(4) of the FCA are also in section 12652(d)(3) of the CFCA, and the only requirement in the CFCA not explicit in the text of the FCA — the requirement that for an individual to qualify as an "original source," that individual's "information [must have] provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure as described in subparagraph (A)," CAL. GOV'T CODE § 12652(d)(3)(B) — has been held implicit in the FCA by our circuit and the Second Circuit, *see Wang*, 975 F.2d at 1418; *Dick*, 912 F.2d at 16. Also, the purposes of the California and federal statutes — and, in particular, the purposes of the public disclosure bar provisions of those statutes — are similar. *See Wohlner*, 109 Cal. App. 4th at 1676 ("California's False Claims Act was

enacted in 1987 and is patterned largely on similar federal legislation. (31 U.S.C. § 3729 et seq.).”); *id.* at 1683 (“The public disclosure jurisdictional bar [in the CFCA] . . . is designed to bar parasitic or opportunistic qui tam actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud.”); *Allstate*, 107 Cal. App. 4th at 566 (“Like the federal False Claims Act, the [CFCA] was intended to limit the availability of qui tam actions so as to protect against ‘opportunistic’ or ‘parasitic’ actions.”).

Because of the similarity between the relevant wording and purposes of the CFCA and the FCA, as interpreted by our circuit and the Second Circuit, California courts would look to pertinent federal precedent in the Second and Ninth Circuits in interpreting the CFCA. Although there is a circuit split on whether the federal statute requires that individuals inform the government prior to making the “public disclosure” at issue, there is not a circuit split on whether the federal statute so requires in those circuits that recognize under the FCA the requirement that the CFCA explicitly states — that individuals play a role in the “public disclosure” at issue to qualify as “original sources.” The question whether these statutes require notification to the government prior to public disclosure is, as established earlier, closely linked to the question whether these statutes require that individuals have a hand in the public disclosure. Because the CFCA incorporates the latter requirement, we expect that California courts would look to federal precedent from only those circuits recognizing that requirement in determining whether the former requirement obtains under the CFCA.

**[10]** In any case, the same reasons we cited to justify our holding that the federal statute does not incorporate JCI’s proposed requirement apply with at least equal force to the California statute. Indeed, there are two respects in which the reasons we cited earlier apply with greater cogency in the context of interpreting the CFCA. First, the fact that all

requirements under the CFCA heretofore recognized, including the requirement that individuals must have had a hand in the "public disclosure" at issue to qualify as "original sources," are *explicit* in the CFCA suggests that we should be especially loath to read into the CFCA *implicit* requirements. Second, California courts have stated that "the public disclosure bar should be applied only as necessary to preclude parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims." *Wohlner*, 109 Cal. App. 4th at 1683. Reading JCI's proposed requirement into the CFCA is not "necessary to preclude parasitic or opportunistic actions," suggesting that California courts would not recognize such a requirement.

**[11]** For all of the foregoing reasons, we hold that there is no requirement under the CFCA that individuals inform the government prior to the "public disclosure" at issue to qualify as "original sources." We therefore reverse the district court's contrary holding.[9]

## C.

JCI points out that, even though the district court's grant of summary judgment relied only on jurisdictional grounds, we may affirm the district court's grant of summary judgment on any ground supported in the record. *See Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). JCI contends that "[a] separate basis for affirming the district court's decision lies in the fact that Relators' substantive allegations cannot support a claim under the FCA" because they are "based on an alleged Rule of Reason antitrust violation, a sub-

---

[9]Because of our holding, we do not reach Relators' argument that even if the California statute encompasses JCI's proposed requirement, they satisfied that requirement by informing officials at the University of California, Riverside about Johnson Controls' "bid rigging" prior to filing the civil complaint in state court.

jective, fact specific analysis that cannot support False Claims Act liability.”

We decline JCI’s invitation to affirm on this alternate ground. We have noted that while “we *may* affirm the district court’s judgment on a different ground, we need not do so,” and “we usually do not.” *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003) (emphasis added), *rev’d on other grounds*, 544 U.S. 336 (2005).

The question of whether, and if so when, bid rigging amounts to an FCA violation is complex, nuanced, and fact-dependent. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787 & n.11, 788 (4th Cir. 1999) (observing that FCA cases involving collusive bidding can be brought under “false certification” or “fraud-in-the-inducement” theories and making clear through its description of these theories that such claims are complex and fact-dependent). Here, the summary judgment motion was brought well before the scheduled close of discovery dates. The parties dispute whether additional discovery is needed before the court can rule on the summary judgment motion. Because of its holding on the original source question, the district court has not had an opportunity to rule on the discovery question.

**[12]** District courts have wide latitude in controlling discovery, and decisions not to permit further discovery in response to motions made pursuant to Federal Rule of Civil Procedure 56(f)[10] are reviewed for abuse of discretion. *United*

---

[10]Federal Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party’s opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Because Relators' FCA claims are complex and fact-dependent and because the district court has not ruled on Relators' request for additional discovery and has broad discretion to decide that issue, we decline to affirm the district court's decision on this alternate ground on the current record.

[13] We therefore reverse the district court's grant of summary judgment for JCI on both the FCA and CFCA claims and remand for proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.