**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MORTEZA EGHBAL; MARILYN SYLVIA
TRUJILLO,
*Defendants-Appellants.*

No. 07-55372

D.C. No.
CV-06-01091-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
June 4, 2008—Pasadena, California

Filed December 5, 2008

Before: William C. Canby, Jr. and Jay S. Bybee,
Circuit Judges; Justin L. Quackenbush,
Senior District Judge.*

Opinion by Judge Quackenbush

---

*The Honorable Justin L. Quackenbush, Senior District Judge for the
Eastern District of Washington, sitting by designation.

**COUNSEL**

Lawrence C. Ecoff, Esq., Beverly Hills, California, and Michael D. Nasatir, Esq., Santa Monica, California, for the appellants.

Steve Frank, Douglas N. Letter, and Brian R. Young, Attorneys, U.S. Department of Justice, Washington, D.C., for the appellee.

**OPINION**

QUACKENBUSH, Senior District Court Judge:

This is civil action brought under the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.,* against Morteza Eghbal and Marilyn Trujillo to recover treble damages and civil penalties for making false statements to procure home mortgage insurance from the Department of Housing and Urban Development (HUD). Defendants Eghbal and Trujillo appeal from the February 23, 2007 order of the District Court of the Central District of California granting the United States' motion for summary judgment.

The district court had jurisdiction pursuant to 28 U.S.C. § 1345 and 31 U.S.C. § 3730(a) and this court has jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's grant of summary judgment de novo, *United States v. Johnson Controls Inc.*, 457 F.3d 1009, 1012-13 (9th Cir. 2006), we affirm.

## I. BACKGROUND

Throughout the 1990s, Eghbal and Trujillo purchased HUD-foreclosed homes and resold them for profit to buyers with mortgage secured loans insured by HUD.[1] Eghbal and

---

[1]The district court noted some confusion in the record over whether the loans were actually insured by "FHA," which meant either the "Federal

Trujillo sold to buyers who lacked sufficient assets to cover the down payment on the properties, and provided the down payment for the buyers by depositing their own personal funds into escrow via cashiers' checks.

HUD would not insure a loan for a home for which the down payment was paid by the seller. To that end, HUD required a seller of a home to sign a document called an Addendum to the HUD-1 Settlement Statement (Addendum). By signing the Addendum, the seller certified that he had not, and would not, pay the buyer for any part of the down payment, nor did the seller have knowledge of any loans made to the buyer for purposes of financing the transaction other than those described in the sales contract. HUD would also not insure a loan without a validly signed Addendum. For each instance in which they provided the down payment via cashier's check, Eghbal and Trujillo fraudulently signed the Addendum, falsely stating that they provided no funds towards the down payment.

In total, Eghbal and Trujillo sold 200 properties, at least 62 of which defaulted on their HUD insured mortgages. The pair were criminally charged with making false statements concerning these 62 properties, to which they pled guilty via written plea agreements. A smaller subset of 27 properties were the subject of the FCA action. HUD paid out about $2.8 million, representing the balances owing on the 27 defaulted mortgages.

## II. PROCEDURAL HISTORY

The Government moved for summary judgment on its claims under the FCA, submitting as evidence of liability the

Housing Association" or "Federal Housing Administration," and which was either a division of HUD or a precursor to the agency. The district court, and this opinion, refer simply to "HUD" as the insurer of the loans.

admissions made in the plea agreements. The Government presented evidence that it paid out approximately $2.8 million in claims from mortgage holders and other expenses related to reselling the foreclosed properties and asked for treble damages. The Government also requested that civil penalties be imposed.

The district court granted the Government's motion, finding that there were no triable issues of fact as to whether Eghbal and Trujillo were liable for violations of the FCA because of the uncontroverted evidence that, absent the false statements on the Addendum, HUD would not have insured the mortgage loans. The district court relied on statements in Eghbal's and Trujillo's plea agreements that "HUD and FHA would not insure a loan if the down payment was paid by the seller, and the Addendum to the HUD-1 was not signed."

The district court further found there were no triable issues of fact regarding the amount of the Government's damages. The court awarded $5,702,664.38 in damages plus the minimum statutory penalty sought, $148,000. The court found that HUD had paid $2.6 million to the lenders of the 27 HUD-insured defaulted mortgages and with HUD's taxes, maintenance, and expenses totaling about $200,000, the total single damages amounted to $2.8 million. That amount was trebled by the court to a total $8.4 million. The court subtracted the $2.7 million received from resale of the properties, indemnification, and restitution made by Eghbal and Trujillo, resulting in a judgment of $5,702,664 plus the civil penalty of $148,000.

## III.   DISCUSSION

### A.

[1] Eghbal and Trujillo contest the district court's finding that they were liable under the FCA for making false claims. Eghbal and Trujillo contend that the Government failed to

show that their false statements set into motion a false claim, because they sought only to fraudulently induce HUD to insure the mortgage, not to have the buyers default or cause the mortgage holders to make claims on HUD. It is true that Eghbal and Trujillo were not parties to the actual claims presented to HUD, made after the buyers defaulted, which resulted in monetary payments by the Government. However, liability under the FCA nevertheless attaches, because the false statements were "relevant to the government's decision to confer a benefit." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006). The plain language of the FCA contemplates liability not only for fraudulently causing the Government to pay a claim, but also for causing the Government to *approve* a claim. 31 U.S.C. § 3729(a)(1).

[2] The Supreme Court's recent decision in *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), confirms this reading of the FCA. The Court held that FCA liability attaches to a false statement that has a "material effect" on the Government's eventual decision to pay a claim. *Id.* at 2130-2131. The district court's finding that use of fraudulent information to induce the Government to provide a loan guarantee constitutes a false claim under the FCA is also consonant with holdings in our sister circuits. *See United States v. Miller*, 645 F.2d 473, 476 (5th Cir. 1981) (holding allegations of defendant's false representation of amount of buyers' down payment in applications for FHA-insured loans is a false claim under the FCA); *United States v. Veneziale*, 268 F.2d 504, 505 (3d Cir. 1959) (holding defendant liable under the FCA where he caused buyers to make a fraudulent application for an FHA-insured loan that defaulted).

Relying on *United States v. McNinch*, 356 U.S. 595, 599 (1958), Eghbal and Trujillo argue that false statements supporting the loan applications are not, by themselves, a "claim" for which FCA liability attaches. *McNinch* is easily distinguished. There, the Supreme Court held that an application

for credit insurance containing false information did not constitute a claim against the government, because the mere agreement to insure a loan never required the disbursement of funds. *Id.* However, the Supreme Court specifically declined to answer in *McNinch* the question presented here, noting that

> Since there has been no default here, we need express no view as to whether a lending institution's demand for reimbursement on a defaulted loan originally procured by a fraudulent application would be a 'claim' covered by the False Claims Act.

*Id.* at 599 n.6; *see also United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995); *Veneziale*, 268 F.2d at 505.

## B.

The parties disagree about the requisite causation the Government must prove in order to establish FCA liability — a narrower proximate causation versus a "but for" standard — but the district court found that the undisputed evidence would satisfy either standard. This court agrees. Utilizing the narrower approach, in *United States v. Hibbs*, 568 F.2d 347 (3d Cir. 1977), the court held that the "but for" causation element would not be applied, but rather a causal connection should be utilized where the Defendant misrepresented the condition of real property to obtain mortgage insurance. However, the *Hibbs* court, at 352, found the less stringent view of causation to be properly applied where "the false information furnished to the government bore upon the likelihood of the applicants meeting mortgage payments, and thus the misrepresentation had a causal connection with the subsequent defaults." *Id.* at 352 (citing *United States v. Ekelman & Associates*, 532 F. 2d 545 (6th Cir. 1976)). The Third Circuit subsequently held in *United States ex rel. Cantekin v. Univ. of Pittsburgh*, 192 F. 3d 402, 417 (3d Cir. 1999) that false statements in applying for a Government grant are sufficient to establish causation. Other courts that have agreed with the

more narrow causation approach have still found that false statements regarding the credit worthiness of purchasers to afford housing establish the required causal connection. *See e.g., United States v. Miller*, 645 F. 2d at 475. The Seventh Circuit is in accord with this view, holding in *United States v. First Nat'l Bank of Cicero*, 957 F. 2d 1362, 1374 (7th Cir. 1992) that "[i]f the government would not have made a financial commitment absent the claimant's false statement, and the government is nevertheless required to pay a mortgage insurance claim or loan guaranty, the government has suffered damage 'because of' the false statement, as required by the Act."

[3] We agree with the district court that the false statements at issue here bore directly upon the likelihood that the buyers would be unable to make their mortgage payments, and thus the misrepresentations had a causal connection to the subsequent defaults sufficient to support FCA liability. "[T]he very concern targeted by the prohibition against direct seller subsidies — that buyers who could not meet the 3% down payment requirement would have an inadequate incentive to avoid default — was exactly what eventuated." *United States v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008) (holding that fraudulent statements to HUD regarding origin of down payment directly and proximately caused HUD's losses and were therefore compensable under the Mandatory Victims Restitution Act); *see also Veneziale*, 268 F.2d at 505 ("[T]he fraudulent statement in the loan application as to the purpose of the borrowing was an essential inducement to the Federal Housing Administration guaranty upon which the government has now had to pay. Thus the wrong of the defendant was an important, even an essential factor in subjecting the government to an enforceable demand for money."). Further, to the extent that any showing of reliance by the Government might be required, the district court correctly held that it had been proven by Eghbal's and Trujillo's admissions that HUD would not have insured the mortgages if it had known they

had paid the down payments or that they had falsely signed the Addendum.

## C.

**[4]** The FCA provides for damages of "3 times the amount of damages which the Government sustains" and civil penalties of $5,000 to $10,000 per claim. 31 U.S.C. § 3729(a), 28 U.S.C. § 2461. The Supreme Court has observed that the FCA speaks of multiplying damages, not " 'net damages' " or " 'uncompensated damages.' " *United States v. Bornstein*, 423 U.S. 303, 314 n.10 (1976). In computing the treble damages, the Court specifically directed that "the Government's actual damages are to be [multiplied] before any subtractions are made for compensatory payments previously received by the Government from any source." *Id.* at 316.

**[5]** Eghbal and Trujillo concede the amount of the judgment against them was correctly calculated pursuant to *Bornstein.* Their contention that this correctly-calculated award violated the Eighth Amendment's prohibition on excessive fines has no merit. The district court made specific findings according to the factors outlined in *United States v. 3814 NW Thurman Street,* 164 F.3d 1191, 1197-98 (9th Cir. 1999), to analyze whether the amount of damages was grossly disproportional to the gravity of the offense. The district court noted that the 27 false claims were related to other illegal activities, additional and greater penalties could have been (but were not) imposed, and the harm caused by the scheme was far-reaching. We agree that the amount of the forfeiture was not so grossly disproportionate to the gravity of the offense as to violate the Eighth Amendment, especially because a systematic and ongoing scheme like Eghbal's and Trujillo's undermines the integrity of the programs and erodes the public confidence in the Government's ability to manage and fund such programs.

## CONCLUSION

The judgment of the district court is

**AFFIRMED.**