265 F.3d 1011 (9th Cir. 2001)
 UNITED STATES OF AMERICA EX REL. FOUNDATION AIDING THE ELDERLY; MARSHA J. BAKER, PLAINTIFFS-APPELLANTS,
v.
HORIZON WEST INC., A CALIFORNIA CORPORATION; HERITAGE CONVALESCENT HOSPITAL; EMPRESS CONVALESCENT HOSPITAL; EMERALD DISTRIBUTING COMPANY, INC.; FAR WEST INC., A CALIFORNIA CORPORATION; LINWOOD GARDENS CONVALESCENT HOSPITAL, INC., A CALIFORNIA CORPORATION; MID-VALE CONVALESCENT HOSPITAL, INC.; SACRAMENTO CONVALESCENT HOSPITAL, INC., A CALIFORNIA CORPORATION; SOUTH GATE CARE CENTER INC., A CALIFORNIA CORPORATION; VALLEJO CONVALESCENT HOSPITAL, INC.; WESTGATE GARDENS CONVALESCENT CENTER, INC.; MONTEREY BAY CONVALESCENT HOSPITAL, INC.; SIERRA MEDICAL ENTERPRISES INC. SIERRA MEDICAL ENTERPRISE, INC. DBA GRASS VALLEY CONVALESCENT HOSPITAL; EL DORADO CONVALESCENT HOSPITAL INC.; FOOTHILL OAKS CARE CENTER INC.; HILLTOP MANOR CONVALESCENT HOSPITAL INC., LAKEPORT SKILLED NURSING CENTER INC.; LINCOLN MANOR INC.; LIVE OAK MANOR INC.; MEADOW VIEW MANOR INC.; MONTEREY PINES SKILLED NURSING FACILITY INC.; NAPA NURSING CENTER INC.; PLACERVILLE PIES CONVALESCENT HOSPITAL INC.; ROSEVILLE CONVALESCENT HOSPITAL INC.; SIERRA HILLS CARE CENTER INC.; SUNNY HILLS CONVALESCENT HOSPITAL INC.; VALLEY VIEW SKILLED NURSING FACILITY INC.; WALNUT WHITNEY CONVALESCENT HOSPITAL INC.; SIERRA SOLANO CARE CENTER INC.; WESTCARE MANAGEMENT INC.; FOUR CORNERS REGIONAL CARE CENTER INC.; PARKDALE CARE CENTER INC.; RED CLIFFS REGIONAL INC.; HORIZON WEST INC.; PACIFIC WEST PHARMACY INC., A CALIFORNIA CORPORATION; ELLEN L. KUYKENDALL; BERNICE SCHRABECK; MICHAEL MCDONALD; MILTON HARMON; AUBURN MANOR INC., DBA GOLDEN EMPIRE CONVALESCENT HOSPITAL DBA PARKVIEW NURSING CENTER; MEDICREST OF CALIFORNIA INC., DBA MEDICAL CENTER CONVALESCENT HOSPITAL; MEDICREST OF CALIFORNIA 1 INC., DBA ARLINGTON GARDENS CONVALESCENT HOSPITAL DBA MONTCLAIR MANOR CONVALESCENT HOSPITAL; WHITEHALL CONVALESCENT HOSPITAL INC., DBA WELLESLEY MANOR CONVALESCENT HOSPITAL; SIERRA HEALTH CARE MANAGEMENT CORPORATION DBA SIERRA HEALTH CARE CONVALESCENT HOSPITAL; SANDY REGIONAL INC., SANDY REGIONAL CONVALESCENT AND REHABILITAION CENTER, DEFENDANTS-APPELLEES.
 No. 99-17539
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 11, 2001
Filed September 13, 2001
Amended December 20, 2001
 
 [Copyrighted Material Omitted]
 Marie S. Weiner, Burlingame, California, for the plaintiffs-appellants.
 Norman C. Hile, Sacramento, California, for the defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California Lawrence K. Karlton, District Judge, Presiding D.C. No. CV-97-548 LKK
 Before: Stephen Reinhardt, A. Wallace Tashima, and Marsha S. Berzon, Circuit Judges.
 
 Tashima, Circuit Judge
 Opinion by Judge Tashima
 I.
 
 1
 Appellants filed this qui tam action alleging that Appellees defrauded the United States by receiving payments from Medicare and Medicaid for care which was not given. The district court dismissed the action because it held that 31 U.S.C. §§ 3730(e)(4)(A)'s public disclosure bar deprived it of jurisdiction. We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291.[1] We review the district court's findings of fact relevant to its determination of subject matter jurisdiction for clear error. See United States ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ., 161 F.3d 516, 520 (9th Cir. 1999). Whether a particular disclosure triggers the jurisdictional bar of §§ 3730(e)(4)(A), however, is a mixed question of law and fact that we review de novo. See United States ex rel. Lindenthal v. Gen. Dynamics Corp., 61 F.3d 1402, 1409 n.9 (9th Cir. 1995).
 
 II.
 
 2
 The False Claims Act ("FCA") deprives a district court of jurisdiction over any qui tam action that is based on allegations or transactions already disclosed in certain public fora, unless the relator is the original source of the information underlying the action. A-1 Ambulance Serv., Inc. v. California, 202 F.3d 1238, 1243 (9th Cir. 2000).[2] In analyzing whether a claim is barred under the FCA, we must first determine whether there has been a prior "public disclosure" of the "allegations or transactions" underlying the qui tam suit. See id. (citing United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999)). "If and only if there has been such a public disclosure, " we then inquire into whether the relator is an "original source" within the meaning of §§ 3730(e)(4)(B). Id.
 
 
 3
 The question of whether the "allegations or transactions" underlying the relators' fraud claims have been publicly disclosed, in turn, requires that we make two separate but related determinations. See A-1 Ambulance Serv. , 202 F.3d at 1243. First, we "must decide whether the public disclosure originated in one of the sources enumerated in the statute." Id. Public disclosure can occur in one of only three categories of public fora: (1) in a "criminal, civil, or administrative hearing;" (2) in a "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation;" or (3) in the "news media." Id. (quoting 31 U.S.C. §§ 3730(e)(4)(A)).
 
 
 4
 If there has been a public disclosure through one of these sources, we then determine whether the content of the disclosure consisted of the "allegations or transactions" giving rise to the relators' claim, as opposed to "mere information." Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1473 (9th Cir. 1996). The substance of the disclosure, however, need not contain an explicit "allegation" of fraud, so long as the material elements of the allegedly fraudulent"transaction" are disclosed in the public domain. See id. (citing United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994)).
 
 A.
 
 5
 The first issue tendered for decision is whether the publicly-disclosed surveys at issue qualify as public disclosures as defined in the statute.[3] Appellants argue that the surveys do not qualify as public disclosures because they are not "audits," "reports," or "investigations" within the meaning of § 3730(e)(4)(A)'s second category of public fora.[4] Appellees contend that the surveys do so qualify and further argue that the surveys also qualify as public disclosures falling within §§ 3730(e)(4)(A)'s first category of public fora--namely, as "criminal, civil, or administrative hearings."
 
 
 6
 We need not answer that question today, however. That is so because, even assuming that the surveys do qualify as public disclosures, this action is still not barred because none of the disclosures in the surveys or any of the other disclosures reveal either the allegations or transactions at issue in this case.
 
 B.
 
 7
 Even assuming that a disclosure qualifies as a "public disclosure" under §§ 3730(e)(4)(A), in order for the jurisdictional bar to apply, that disclosure must reveal the"allegations or transactions" underlying Appellants' complaint. See Hagood, 81 F.3d at 1473. In analyzing whether allegations of fraud were previously disclosed, we must determine whether there was a public disclosure of fraud which was"substantially similar to those disclosed in the earlier . .. action." See United States ex rel. Lujan v. Hughes Aircraft Co. , 162 F.3d 1027, 1033 (9th Cir. 1998). In analyzing whether the transactions underlying a relator's complaint were publicly disclosed, however, we adopt the analysis first laid out by the District of Columbia Circuit in Spingfield Terminal:
 
 
 8
 [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.
 
 
 9
 14 F.3d at 654. In so doing, we also adopt the District of Columbia Circuit's reasoning that in a fraud case, X and Y inevitably stand for but two elements: "a misrepresented state of facts and a true state of facts." Id. at 655.
 
 C.
 
 10
 Several documents purportedly publicly disclosed allegations of fraud against at least some Appellees, including the parent company of all of the other Appellees, Horizon West, Inc. For example, a complaint filed in the Yolo County Superior Court raises general allegations of fraud against some of the Appellees. In the body of the complaint, however, the plaintiffs only alleged that the defendants generally misrepresented to them the level of care provided by the particular nursing facility. While these allegations may disclose some fraud on the part of the defendants, they only remotely support the claims at issue. Indeed, at most, these allegations only disclose the true set of facts, viz., that the facility in question provided substandard care. What is conspicuously missing from that complaint are any allegations that the named defendants misrepresented the level of care to the government and received payment for that alleged substandard care.
 
 
 11
 Also, a complaint filed in the Solano County Superior Court against Horizon West, Inc., Vallejo Convalescent Hospital Inc., and Ellen Kuykendall (among others) generally alleged that these defendants "fraudulently conceal[ed] from [residents, employees, physicians, governmental officials who inspect or have other business in the facility, family members, friends, suppliers of goods and services, volunteers and other persons who frequent the facility] the improper, deficient care of residents and the hazardous health conditions alleged herein." But, the complaint addressed a very different problem-asbestos contamination--than the one alleged here. Thus, the allegations contained therein completely failed to disclose anything remotely similar to the fraud alleged here.[5]
 
 
 12
 Consequently, these unrelated allegations of fraud cannot trigger §§ 3730(e)(4)(A)'s jurisdictional bar. Although "fraud" may have been generally alleged against some of the current Appellees in certain contexts, none of the evidence in the record "fairly characterizes" the kind of fraud alleged by Appellants here. To put it somewhat differently,"it is [im]possible to say that the evidence and information in the possession of the United States at the time the False Claims Act suit was brought was sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute." United States ex rel. Joseph v. Cannon , 642 F.2d 1373, 1377 (D.C. Cir. 1981) (quoting Pettis ex rel. United States v. Morrison-Knudsen Co., 577 F.2d 668, 674 (9th Cir. 1978)). Therefore, we conclude that this action is not barred by the previous disclosure of the fraud at issue.
 
 D.
 
 13
 Even if the above allegations did not specifically identify the fraud at issue, the action may still be barred if some disclosures revealed the transactions underlying the fraud. On this record, however, we are unable to so conclude. The primary source which could potentially reveal the underlying fraudulent transactions are the surveys.[6] In order to do so, the surveys must disclose both "a misrepresented state of facts and a true state of facts." We do not dispute Appellees' assertion that at least the true state of fact has been disclosed by the surveys--namely, that the defendant provided substandard care. But we cannot conclude from the surveys alone that the misrepresented state of fact has also been disclosed. This is especially important because the FCA speaks of "transactions." Thus, in order to invoke the jurisdictional bar, a defendant must show "that the transaction . . . be one in which a set of misrepresented facts has been submitted to the government." United States ex rel. Dunleavy v. County of Del., 123 F.3d 734, 741 (3d Cir. 1997) (footnote omitted); accord United States ex rel. Wang v. FMC Corp., 975 F2d 1412, 1420 (9th Cir. 1992) ("The requisite intent is the knowing presentation of what is known to be false" which is "something less than that set out in the common law."). They have not done so here.
 
 III.
 
 14
 Accordingly, we conclude that the evidence disclosed failed to expose either the fraud alleged or the transactions underlying that fraud. Consequently, the district court's dismissal of the action as barred by a "public disclosure" is reversed and the case is remanded for further proceedings consistent with this opinion.[7]
 
 
 15
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Appellees contend that we lack jurisdiction over this appeal because Appellants failed to amend their notice of appeal after the district court issued its final written order. Fed. R. App. P. 4(a)(2) provides, however, that if a "notice of appeal [is] filed after the court announces a decision or order--but before the entry of the judgment or order--[it] is treated as filed on the date of the entry." Thus, Appellants' notice of appeal, which was filed after the district court orally announced its decision on November 11, 1999, but before it issued its written order, became effective on January 6, 2000--the date of the entry of the order, and we do not lack jurisdiction over this appeal.
 
 
 [2]
 The relevant section of the FCA provides: No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 31 U.S.C. §§ 3730(e)(4)(A).
 
 
 [3]
 Appellants challenge only whether the surveys qualify as public disclosures, not whether the other publicly-disclosed information offered by Appellees, such as the civil lawsuits filed in two separate courts, the newspaper article, and the various public hearings, so qualify under §§ 3730(e)(4)(A).
 
 
 [4]
 In order to participate in either Medicare or Medicaid, skilled nursing facilities must permit the surveys at issue and the inspections on which they are based. 42 U.S.C. §§ 1395i-3(g)(2)(A)(i) (providing that to be eligible to receive Medicare and Medicaid, all skilled nursing facilities "shall be subject to a standard survey, to be conducted without any prior notice to the facility."). The purpose of these surveys is to "assess whether the quality of care, as intended by the law and regulations, and as needed by the resident, is actually being provided in nursing homes." 42 C.F.R. §§ 488.110. These surveys, inter alia, (1) report on the quality of care; (2) review the facilities' written plans of care and, through residents' assessments, determine the adequacy of such plans of care; and (3) review compliance with residents' rights. 42 U.S.C. §§ 1395i-3(g)(2)(A)(ii); 42 C.F.R. §§ 488.1-488.456. To insure consistent reporting, the interpreting regulations provide for the surveys' (1) form, see 42 C.F.R. §§ 488.115; (2) content, see id. §§ 488.110, and (3) frequency, see id. §§ 488.308.
 
 
 [5]
 Appellees also present a Sacramento Bee article which reported that Foothill Oaks Care Center received a citation, and a fine, for a premature entry on a patient's chart. They argue that this article publicly disclosed a fraudulent transaction and thus bars the instant suit. Once again, however, we do not believe that this report would give the government sufficient information to initiate an investigation against this facility. See Alcan Elec. and Eng'g, Inc., 197 F.3d at 1019. While the premature entry in the patient's medical chart may be a technical violation of the appropriate regulations, and thus subjected the facility to a penalty, it sheds little light on the current allegations--namely, that payments were sought for care not given. Indeed, nothing in the article indicates that the care which is the subject of the premature entry was not given, or that it was paid for. Thus, we decline to hold that the jurisdictional bar applies to that Appellee.
 Appellees also point to general allegations of fraud that were directed at the nursing home industry in general. But, as pointed out by Appellants, none of these "disclosures" related to Horizon West or specifically to any of its facilities. Therefore, they do not trigger the jurisdictional bar. See Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 566 (11th Cir. 1994) ("The allegations of widespread . . . fraud made in sources in which BCBSF was not specifically named or otherwise directly identified are insufficient to trigger the jurisdictional bar").
 
 
 [6]
 The Second Amended Complaint specifically alleges instances of substandard care against 17 defendants. The great majority of these specific allegations are taken from the surveys; a few of the specific allegations are based on observations by private individuals. As to all the other defendants, Appellants only generally allege that they have committed acts "similar to other Horizon facilities."
 
 
 [7]
 We also deny Appellees' motion to strike.